**Thane Carl CHEW, Plaintiff,**

v.

**Daryl GATES, individually and as Chief of the Los Angeles Police Department; City of Los Angeles, a Municipal Corporation and Public Entity of the State of California; and Daniel Bunch; Donald Yarnall; Mark Mooring; Patrick McKinley; and Does 1 through 10, 14, 16 through 20, inclusive, each individually and as a Los Angeles Police Officer, Defendants.**

**No. CV 89-5204 RG(JRx).**

United States District Court,
C.D. California.

Aug. 31, 1990.

George V. Denny III, Sherman Oaks, Cal., for Thane Carl Chew.

James K. Hahn, City Atty., John T. Neville, Sr. Asst. City Atty., William W. Koepcke, Deputy City Atty., Los Angeles, Cal., for City of Los Angeles.

## ORDER AND OPINION

GADBOIS, District Judge.

Plaintiff Thane Carl Chew brings this action pursuant to 42 U.S.C. § 1983 alleging that his constitutional rights were violated when a police dog injured him during his arrest. Here, certain defendants move for summary judgment on plaintiff's claims that the training and use of police dogs to search for, seize and hold suspects is unconstitutional.

## FACTUAL ALLEGATIONS

On September 4, 1988, at about 2 p.m., when the temperature had soared to 110 degrees, Plaintiff Chew was stopped for a traffic violation. Before the officer could check him for weapons, Chew fled on foot into a large junkyard where he hid for two hours. The traffic officer discovered that Chew had three outstanding felony warrants and called for assistance. A perimeter was set up around the junkyard, a helicopter began searching the area, and police canine units were called in to search for and find Chew.

Officer Bunch and his dog Volker responded to the call and began searching for Chew. Volker had been trained to seek, find and seize the suspect, by biting if necessary, unless called off by the handler. The pair searched for Chew for some time before the dog picked up Chew's scent.

Chew was hiding in a crouched position, between two large trash bins. He alleges that after he became aware of the dog's presence, he tried to surrender and called out to the handler to call off the dog. Instead, Officer Bunch allegedly ordered Volker to attack Chew, which Volker did, causing severe injuries to Chew's left forearm, which was almost severed, and Chew's left side. During this time, Chew continued to beg the officers to call off the dog.

Chew alleges that Officer Bunch and/or other officer defendants then kicked and clubbed Plaintiff several times in the head and face, causing more injuries.

## PROCEDURAL BACKGROUND

The First Amended Complaint contains two Counts. Count One alleges that the following police officers are liable in their individual capacities under 42 U.S.C. § 1983 for the violation of Chew's constitutional rights stemming from their use and training of police dogs: Officer Daniel Bunch, who handled the dog which apprehended Chew; Captain Patrick McKinley, who formulated the City's policy regarding the use and training of police dogs; Sergeant Don Yarnall, who implemented the City's policies regarding police dogs; Sergeant Mark Mooring, who was both present at the scene when Chew was apprehended and responsible for implementing the City's police dog policies; and Chief of Police Daryl Gates. Count Two charges that the City of Los Angeles is liable to Chew under *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) for violating his civil rights through the police department's unconstitutional policies of (1) hiring persons who have a history of and/or propensity for violent behavior and using excessive force and (2) training police dogs to attack and bite unarmed, unresisting suspects.

Here defendants McKinley, Mooring, Yarnall (collectively referred to as "the policy-makers") and Gates move for summary judgment on the first count for individual liability on the grounds that they have qualified immunity from Chew's § 1983

954

claims. The City moves for summary judgment on the *Monell* claim arising out of its policy of using and training police dogs to search for, find and seize suspects, by biting if necessary.

## ANALYSIS

### I. *Individual Policy–Maker Defendants*

Chew alleges that it is the policy of the Los Angeles Police Department to train and use police dogs to search for, find and seize suspects, by biting if necessary. Chew claims that defendants Gates and McKinley formulated this policy, and defendants Mooring and Yarnall actually implemented the policy by training the dogs.

Defendants Gates, McKinley, Mooring, and Yarnall claim that they are not individually liable to Chew for his injuries, because they have qualified immunity from civil liability under 42 U.S.C. § 1983. When available, qualified immunity is an issue of law to be determined on a motion for summary judgment, a motion to dismiss, or a motion for directed verdict. *Thorsted v. Kelly*, 858 F.2d 571, 575 (9th Cir.1988).

*Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), grants qualified immunity to government officials performing discretionary functions as long as their conduct does not violate *clearly established* statutory or constitutional requirements of which a reasonable person would have known. The question of whether a government official has qualified immunity for an action turns on the " 'objective legal reasonableness' of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 638–639, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987) (quoting *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738).

Federal law does not specifically bar the use of police dogs to apprehend suspects. No federal statute prohibits the use of police dogs to apprehend suspects by force. Neither the Supreme Court nor the Ninth Circuit has addressed the issue of whether it is constitutional to use police dogs to search for and apprehend a suspect, by biting if necessary. The only federal case to discuss the constitutionality of using police dogs to search for and apprehend a suspect is a Sixth Circuit case, *Robinette v. Barnes*, 854 F.2d 909 (6th Cir.1988) which was decided just 15 days prior to Chew's arrest. There, the court held that the use of a police dog to apprehend a suspect did *not* violate the suspect's constitutional rights.

Nor does state law clearly prohibit defendants' conduct. California Civil Code § 3342 (West 1988) grants civil immunity in California courts where a police dog is used to apprehend a suspect if there is a written Canine Unit Manual at the time of the incident. Under the written Canine Unit Manual which existed at the time of the incident, dogs were trained to find and bark rather than search, find and hold. However, as the statute does not specify whether the use of the dog need be consistent with the policy manual, it is unclear whether the search, find and hold policy violated state law.[1]

Neither federal law nor California law clearly prohibits the training and/or use of police dogs to find, seize and hold suspects, by biting if necessary. Therefore, under *Harlow v. Fitzgerald,* Chief Gates and the policy-makers have qualified immunity from § 1983 claims stemming from their training and/or use of police dogs to search for, find and seize suspects, by biting if necessary, and summary judgment is proper on the individual claims against them.[2]

1. The statute merely states that immunity will apply only where a governmental agency "has adopted a written policy on the necessary and appropriate use of a dog for the police ... work". CAL.CIV.CODE § 3342 (West 1988).

2. This holding does not apply to defendant Bunch, who is alleged to have ordered the dog

to attack Chew after he attempted to surrender. Chew also claims that Bunch beat him after he attempted to surrender. Unlike Bunch, the moving defendants are not alleged to have participated in Chew's arrest. Rather, Chew claims that the training of and use of dogs to seize and hold suspects, by biting if necessary, would violate his constitutional rights under *any* circum-

Contrary to Chew's assertion, the rule enunciated in *Bilbrey by Bilbrey v. Brown,* 738 F.2d 1462 (9th Cir.1984) does not change this result. The court there held that *if* the law were clearly established at the time of the incident during which plaintiff's constitutional rights were allegedly violated, the question of whether a reasonable person would have known that he or she was violating plaintiff's constitutional rights was a question for the trier of fact. 738 F.2d at 1467. Here, however, the Court has found no clear constitutional bar to defendants' conduct. Thus, we need not consider whether defendants reasonably believed that the use of police dogs to search for, find and seize suspects, by biting if necessary, was constitutional.

## II. *The Monell Claim*

In order for a municipality (or the policy-makers on its behalf) to incur liability under 42 U.S.C. § 1983, a plaintiff must show that the alleged unconstitutional act implements or executes a policy adopted by the municipality's officers. *Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "[A] municipality cannot be held liable *solely because it employs a tort-feasor*". *Id.* at 691, 98 S.Ct. at 2036 (emphasis added).

The *Monell* claim at issue stems from the policy of the Los Angeles Police Department ("LAPD") of using police dogs to search for, find and seize suspects, by biting if necessary. Chew claims that the manner in which the police dog was used during his arrest constituted excessive force in violation of his constitutional rights. He further alleges that his arresting officer carried out an LAPD policy of using police dogs to search for, find and seize suspects, by biting if necessary. Thus, part of Chew's *Monell* claim against the City is based on the argument that the use of the police dog to apprehend Chew by

biting him violated his constitutional rights.[3]

The constitutionality of using dogs to search for, find and hold suspects by biting, if necessary, is an issue of first impression in this circuit.

### A. *"Objective reasonableness" analysis under Graham v. Connor*

■ The United States Supreme Court recently addressed the issue of what constitutes excessive and, therefore, unconstitutional force in apprehending a suspect in *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). There, the Court held that excessive force claims under 42 U.S.C. § 1983 should be analyzed exclusively under the Fourth Amendment's "objective reasonableness" standard rather than under a substantive due process test.

According to *Graham,* objective reasonableness must be evaluated in light of the particular circumstances "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight". 109 S.Ct. at 1872. The important factors to be considered when deciding how much force can be used to apprehend a suspect include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* Furthermore,

> the question is whether the officers' actions are 'objectively reasonable' ... *without regard to their underlying intent or motivation* ... An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional."

*Id.* (emphasis added).

When the circumstances of Chew's arrest are analyzed under the three-part test

---

stances. Thus, he alleges that Gates and the policy-makers, as the formulators and implementors of the City's policy, have violated his constitutional rights by creating and implementing this unconstitutional policy.

3. The other basis of Chew's *Monell* claim, that the City has a policy of employing dangerous and violent persons, is not a subject of this motion for summary judgment.

set forth in *Graham*, it is clear that the use of a police dog to search for, find and seize Chew, by biting if necessary, was objectively reasonable. As excessive force was not used, Chew's Fourth Amendment rights were not violated.

First, the crime which prompted Chew's arrest was serious. Although Chew was initially stopped for a traffic violation, the traffic officer discovered that Chew was wanted for three outstanding felony warrants.

Second, there was an immediate threat to the officer's safety. Chew fled before he could be checked for weapons. The officers were required to search for a felon, who was possibly armed, in a large, unknown area, containing several places in which the suspect could hide and/or ambush an officer in pursuit.

The third and final factor of the test is also met. Not only did Chew flee when initially stopped by the traffic officer, his multiple outstanding felony warrants demonstrate a pattern of evading law enforcement. Furthermore, as Chew hid from the officers for two hours, he was not merely fleeing from the officers—he was actively resisting arrest.

Upon application of the *Graham* factors, it is clear that the circumstances of Chew's arrest exposed the police officers to a high degree of risk, which justified a greater use of force. Accordingly, the manner in which the police dog was used to apprehend Chew did not, under the circumstances, infringe on his constitutional rights. Therefore, an LAPD policy which authorizes such force does not give rise to a claim against the City under 42 U.S.C. § 1983.

### B. *Robinette v. Barnes*

The conclusion reached here is similar to the decision of the Sixth Circuit in *Robinette v. Barnes*, 854 F.2d 909 (6th Cir. 1988), which also addressed the constitutionality of using police dogs to search for, find and seize suspects, by biting if necessary. Although *Robinette* pre-dates *Graham*, it is consonant with the holding and analysis of the Supreme Court.

In *Robinette*, the police department employed a "K–9" unit of dogs and handlers similar to the LAPD's "K–9" unit. The dogs there, as here, were trained to track and seize suspects by biting and holding them. In that case, a K–9 unit was called to help apprehend a nighttime burglary suspect who had hidden himself in a car showroom. The suspect was hiding halfway under a car. The dog found him and seized him by the throat. By the time the dog handler found the suspect, he had died of the wounds to the throat.

The Sixth Circuit used the test established in *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) to balance the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interest in using police dogs. The court concluded that even if the use of a properly trained police dog constituted deadly force, it was not unreasonable under the circumstances. *Robinette*, 854 F.2d at 913. "Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." *Id.*

The court found that a reasonably competent officer might determine that a nighttime burglary suspect who knew the building was surrounded, who had been warned that a dog would be used, and who indicated his unwillingness to surrender, posed a threat to the safety of the officer. *Id.* In addition, the officer was required to explore an unfamiliar area in which he knew a man was hiding. *Id.* at 914. Therefore, the court in *Robinette* concluded, the use of a police dog under those circumstances did not violate the suspect's Fourth Amendment rights. *Id.*

There are several differences between the facts in *Robinette* and this case, but they do not change the result reached here. First, in *Robinette*, there was no allegation that the officer intentionally tried to harm the suspect. Rather, the officer there merely followed the police department's procedure of using the dog to help find the

suspect. Here, Chew alleges that Officer Bunch ordered the dog to attack him, and thus intended to harm him. This does not affect the disposition of Chew's *Monell* claim for two reasons. First, Chew does not allege that the LAPD had a policy of deliberately "siccing" dogs on suspects; the LAPD's policy was for the dog to search, find and hold the suspect. If Officer Bunch did deviate from this policy, that fact is relevant to the determination of his personal liability, not the City's. Second, *Graham* specifically states that the officer's intent is *not* relevant to the determination of whether he used excessive force. 109 S.Ct. at 1872.

Second, the search in *Robinette* took place at night in a building, whereas the police in this case searched for Chew in broad daylight and in an open area. In both situations, however, the officers had to search a large unknown area in which they knew a suspect was hiding and which contained several places where a suspect could hide and ambush them. Thus, in both this case and in *Robinette*, the officers faced the same kind of danger, searching for a possibly dangerous suspect in a large unknown area. The difference in time of day is relevant, but not dispositive.

The decision in *Robinette* is consistent with the "objective reasonableness" test set forth in *Graham*. In *Graham*, the Court considered three factors. 109 S.Ct. at 1872. First, the severity of the crime affects how much force may be reasonably employed. In *Robinette*, the crime was burglary, a felony. 854 F.2d at 913.

Second, under *Graham*, whether the suspect poses an immediate threat to the officers must be considered. The *Robinette* court found that a nighttime burglary suspect who knew the building was surrounded, who had been warned that a dog would be used, and who indicated his unwillingness to surrender, threatened the safety of the officers. *Id.*

The third element to be considered in determining the amount of force which would be objectively reasonable is whether the suspect was actively resisting arrest or merely fleeing from the officers. In *Robi-*

*nette*, the suspect was actively resisting arrest for he continued to hide in a large unknown area after he had been warned that a dog would be used. *Id.* at 914.

The circumstances in *Robinette* thus meet the three-element test set forth in *Graham* (severe crime, immediate threat to the officers, and actively resisting arrest), and the decision to uphold the use of police dogs to search for and apprehend suspects, under those circumstances, is consistent with the principles set forth in *Graham*.

Therefore, under *Graham* and, by analogy, *Robinette*, the use of a police dog to search for, find and seize Chew, by biting if necessary, was objectively reasonable under the circumstances and did not violate Chew's Fourth Amendment rights.

In fact, as the Sixth Circuit noted in *Robinette*, the use of a police dog to search for and apprehend a suspect under such circumstances may actually reduce the overall risk of excessive force. 854 F.2d at 914.

## CONCLUSION

For these reasons, summary judgment is granted for defendants Gates, McKinley, Mooring and Yarnall on the individual claims against them and for the City of Los Angeles on the *Monell* claim stemming from the police department's policy of using dogs to search for, find and seize suspects, by biting if necessary.

The only remaining claims for relief are those against Officer Bunch individually, and the *Monell* claim against the City for the practice of hiring dangerous and violent individuals.

IT IS SO ORDERED.