

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-13-2007

# Moore v. Vangelo

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4309

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Moore v. Vangelo" (2007). *2007 Decisions*. Paper 1636.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1636

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 05-4309

DEVIN LAROY MOORE,

Appellant

v.

SERGEANT MICHAEL JOHN VANGELO; Individually and in His
Official Capacity as a Member of the Easton Police
Department; SERGEANT MICHAEL D. WESTON, Individually
and in His Official Capacity as a Member of the Easton
Police Department; CHIEF LAWRENCE R. PALMER, Individually
and in His Official Capacity as a Member of the Easton
Police Department;  OFFICER JOHN DOE, Individually and in
His Official Capacity as a Member of the Easton Police
Department; MAYOR THOMAS GOLDSMITH, Individually and in
His Official Capacity as Mayor of the City of Easton;
CITY OF EASTON

—————————————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No.: 03-cv-04718
District Judge: The Honorable Gene E.K. Pratter

—————————————

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
February 12, 2007

Before: SMITH and FISHER, *Circuit Judges*,
and DIAMOND, *District Judge**

(Filed February 13, 2007)

———————————

*The Honorable Gustave Diamond, Senior District Judge for the Western District of
Pennsylvania, sitting by designation.

_____

OPINION
_____

SMITH, *Circuit Judge*.

In the early morning of March 2, 2002, appellant Devin Laroy Moore was walking on South Third Street in Easton, Pennsylvania with Isaac Holmes and four female friends. The group had just left a bar. Before they reached the lot where the women had parked their vehicle, Saddiquie Williams assaulted Holmes, apparently in retribution for an earlier attack by Holmes' brother on Williams. While the two were fighting, Moore saw a police cruiser approach and inserted himself between the two combatants, hoping to break them apart. The tumult escalated and careened across the street.

Officer Michael Vangelo and his K-9 partner Bere were the first to arrive at the scene of the altercation. Vangelo gave verbal orders to stop fighting, but his words apparently fell on deaf ears, as Moore reported that he heard no warning. Unable to cope with the three perceived combatants alone, Vangelo released Bere, commanding him to bite and hold Moore. Bere bit Moore on the right forearm and held him until he was ordered off by Vangelo. Moore was then immediately grabbed and swept to the ground where Officer Michael Weston handcuffed him. Moore suffered a bite wound.

Following Moore's booking at the police station, an officer took him to Easton Hospital where he was given a shot and his wound was cleaned and bandaged. A few days later, he had an x-ray at St. Luke's Hospital, but he neither sought nor received

2

further treatment. He sued the defendants, Officers Vangelo and Weston, Police Chief

Lawrence Palmer, Mayor Thomas F. Goldsmith, and the City of Easton for violations of

his civil rights under 42 U.S.C. § 1983, and Vangelo for assault and battery. The District

Court granted summary judgment to the defendants on September 6, 2005. Moore filed a

timely appeal.[1] We will affirm the judgment of the District Court.

## I.

We have plenary review over a grant of summary judgment. *Gilles v. Davis*, 427

F.3d 197, 203 (3d Cir. 2005). The District Court's grant of summary judgment in favor of

the appellees will be affirmed if the record demonstrates that "there is no genuine issue as

to any material fact and that they are entitled to a judgment as a matter of law." *Id.*

(quoting *Camiolo v. State Farm Fire & Cas. Co.*, 334 F.3d 345, 354 (3d Cir. 2003)). An

issue is material if there is sufficient evidence favoring the nonmoving party for a jury to

return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

In support of their motion for summary judgment, the defendants argued that

Moore's claims must fail because he had not made out a violation of his constitutional

rights. The District Court agreed and so do we.

## II.

---

[1]The District Court had jurisdiction over the 42 U.S.C. § 1983 claims under 28 U.S.C. §§ 1331 and 1343(3). The Court had supplemental jurisdiction over the assault and battery claim under 28 U.S.C. § 1367. We have jurisdiction under 28 U.S.C. § 1291.

The threshold inquiry in an excessive force case is whether "the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations.'" *Graham v. Connor*, 490 U.S. 386, 397 (1989); *see Brower v. County of Inyo*, 489 U.S. 593, 599 (1989). In *Graham v. Connor*, the Supreme Court explained that the proper application of the reasonableness test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. at 396. This Court later added that*:*

> Other relevant factors include the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.

*Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997).

In evaluating the grant of summary judgment, we "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). Accordingly, we assume that, as Moore claimed, he interceded only to bring the fight to a stop and that he never heard Vangelo give a warning. However, Moore's perspective on the situation has no bearing on the reasonableness of the *police officer's* actions.

Moore testified that he was "in the middle" of Holmes and Williams, and that "at one point I was pushing them and pushing them." He stated that while "I was grabbing

4

him [Holmes] and pushing him, he was punching and kicking and trying to pretty much do whatever he could do." Moore further noted that "[e]verybody was yelling. It was 2 something in the morning and they were fighting so there was a whole bunch going on." Given the scene as Moore described it, Vangelo's use of Bere to curb the pandemonium was reasonable.

Use of a police dog to bite and hold a suspect is not per se unreasonable. *See Mendoza v. Block*, 27 F.3d 1357, 1362 (9th Cir. 1994) (holding that "the deputies' use of the police dog is subject to excessive force analysis"); *Chew v. Gates*, 27 F.3d 1432, 1447 (9th Cir. 1994) (stating that, even though the case must go to the jury to determine if the use of a dog was reasonable, "[n]o decision of which we are aware intimated that a policy of using dogs to apprehend concealed suspects, even by biting and seizing them, was unlawful"); *see also Jarrett v. Town of Yarmouth*, 331 F.3d 140, 150 (1st Cir. 2003) ("We are aware of no post-*Chew* decisions suggesting that bite-and-hold policies are unconstitutional per se."). Although it is true that "injuries are not unusual[,] police dogs can–and often do–cause serious harm," *Vera Cruz v. City of Escondido*, 139 F.3d 659, 661 (9th Cir. 1997), the use of K-9 force to apprehend suspects where the *Graham* factors weigh in favor of the police is reasonable.[2]

---

[2]Moore asserts that the failure of an officer to issue a verbal warning before releasing a police dog to bite and hold a suspect is sufficient to establish an excessive force claim. This Court has no binding precedent that constrains us to apply a warning requirement, and we decline to hold that the deployment of a dog without a verbal warning is per se objectively unreasonable. Supreme Court precedent regarding the use of deadly force does not even impose such a stringent requirement. *See Tennessee v. Garner*, 471 U.S. 1

Vangelo was confronted with a dangerous situation where the safety of officers and others was at risk. The melee going on before him was an ongoing assault. Three people were involved in the fight and Vangelo was, at least temporarily, alone. Keeping in mind that "police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation," we conclude that the force used by Vangelo was objectively reasonable.[3] *Graham*, 490 U.S. at 397.

Moore contends that Weston used excessive force in handcuffing him.[4] He stated in his deposition that after he was bitten, Weston grabbed him and attempted to put

(1985) ("[I]f the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and *if, where feasible, some warning has been given*." *Id.* at 11-12 (emphasis added). *But see Kuha v. City of Minnetonka*, 365 F.3d 590, 599 (8th Cir. 2003); *Vathekan v. Prince George's County*, 154 F.3d 173, 179 (4th Cir. 1998).

[3]Moore also claims that the District Court erroneously rejected his argument that Weston violated his rights by not intervening to stop Vangelo's excessive use of force. Because Vangelo's use of force was not excessive, this claim necessarily fails.

[4]Moore also argues that the District Court erred in failing to address Moore's "Fourth Amendment unlawful search and seizure claim" when it granted summary judgment for Weston. The Court did, in fact, address that claim when it engaged in the excessive force analysis with respect to Weston. As the Supreme Court stated in *Graham*, "*all* claims that law enforcement officers have used excessive force–deadly or not–in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Id.* at 395. The District Court properly examined the evidence as to Moore's handcuffing and determined that "[t]he facts as alleged by Mr. Moore demonstrate a reasonable use of force by Officer Weston under the circumstances at the time." Thus, we find no merit to Moore's contention that the District Court failed to address his Fourth Amendment claim.

handcuffs on him, but then "he tripped me. I don't know – he didn't kick me or punch me or anything like that. It was more like a trip." He noted that his legs were swept out from under him and he "went straight down to the ground," but explained that he received no injury as a result of this maneuver by Weston.

The *Graham* factors also apply to Weston's actions, and the District Court properly considered the facts Moore alleged in concluding that Weston's use of force was reasonable. Weston was responding to a radio transmission by Vangelo that indicated that he required immediate help. Upon his arrival, Bere was holding Moore, and Vangelo and another responding officer were attempting to subdue Williams while Holmes stood close by. By Moore's own admission, Weston was unable to put the handcuffs on him while Moore remained upright, and thus, it was both reasonable and necessary to take Moore to the ground in order to secure him.

All of the actions taken by the officers were objectively reasonable under the test outlined in *Graham* and its progeny. Consequently, these actions did not constitute excessive force, and there was no violation of Moore's Fourth Amendment rights.

III.

Moore also appeals the dismissal of his municipal liability claim. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). In order for municipal liability to exist, "there ... must be a violation of the plaintiff's constitutional rights." *Brown v. Comm., Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473,

7

482 (3d Cir. 2003). Accordingly, as we have found no violation of Moore's rights, we find no basis for municipal liability. The District Court properly granted summary judgment in favor of the City, Chief Thomas, and Mayor Goldsmith.

IV.

Moore challenges the District Court's grant of summary judgment as to his state law assault and battery claim, but supports his challenge only by noting that the Court may not assume facts based on contradictory evidence in granting summary judgment. *See Mest v. Cabot Corp.*, 449 F.3d 502, 514 (3d Cir. 2006). The District Court properly construed the facts in the light most favorable to Moore, and made no assumptions based on contradictory evidence. Indeed, Moore does not dispute that he was physically involved in the altercation. He only suggests that his motives for taking part in it were altruistic. In Pennsylvania, "[t]he reasonableness of the force used in making the arrest determines whether the police officer's conduct constitutes an assault and battery." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994). For the reasons previously discussed, Vangelo's actions were reasonable and therefore his conduct did not constitute an assault and battery. The District Court properly granted summary judgment on this claim.

V.

Moore's challenge to the District Court's grant of summary judgment will be denied. The District Court applied the appropriate standard and we will affirm.

8