Ronald MENDOZA, Plaintiff–Appellant,

v.

Sherman BLOCK, Los Angeles County, et al., Defendants–Appellees.

No. 92–56225.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 1, 1994.

Decided April 15, 1994.

As Amended May 31, 1994.

Stephen Yagman, Yagman & Yagman, Venice, CA, for plaintiff-appellant.

Scott D. MacLatchie, Carol D. Janssen, Franscell, Strickland, Roberts & Lawrence, Pasadena, CA, for defendants-appellees.

Before: BROWNING, BOOCHEVER, and KLEINFELD, Circuit Judges.

Opinion by Judge BOOCHEVER.

BOOCHEVER, Circuit Judge:

Ronald Mendoza was severely bitten by a police canine while attempting to evade arrest for robbing a bank by hiding in some bushes. His civil rights action against the Los Angeles County Sheriff's deputies involved in his arrest was dismissed on the grounds of qualified immunity, and he appeals.

We affirm.

## BACKGROUND

On March 9, 1988, Ronald Mendoza robbed a bank in Hacienda Heights, California. He fled first in his car, then abandoned the car and fled on foot. He ran about a half-mile, then crawled under some bushes on private property and hid.

Sheriff's deputies found Mendoza's abandoned car, and by tracing the license plate they ascertained that Mendoza previously had been jailed for another bank robbery. A radio transmission from police headquarters warned the deputies pursuing Mendoza that he might be armed.

After several hours of hiding in the bushes, Mendoza heard the deputies warning the owners of the property on which he was hiding to stay indoors. Mendoza also heard a helicopter in the neighborhood, which he assumed was searching for him; however, he did not recall hearing any helicopter announcements stating that he was surrounded and that a dog might be deployed. A deputy testified that the helicopter made at least twenty such announcements.

Mendoza saw a police dog, a rottweiler, coming toward him and covered his face with his hands. At this point, the deputies' and Mendoza's versions of the facts diverge. Mendoza claims that the dog bit down on his right arm and pulled him out of the bushes. He said that no one spoke to him prior to the bite. He testified that he moved with the dog out of the bushes and that the deputy handling the dog put a gun to his head. The dog handler told Mendoza to back up, at which point the dog bit down hard, puncturing Mendoza's skin. He was then hit on the head from behind with something hard. Mendoza fell, face first, to the ground and was held there spread-eagle. Mendoza claims that he was handcuffed, and then the dog switched its bite to his other side, wounding him again. The deputies told him to "shut [his] fucking mouth" when he pleaded with them to remove the dog.

Mendoza testified that eventually the dog released his arm and that he was placed in the patrol car on his face and knees; he was in great pain. During the drive to the hospital the deputy driving the car repeatedly slammed on the brakes. Mendoza said the driver also made comments about the smell of Mendoza's wounds. Mendoza testified that at the hospital the deputies kept asking him his name, and when he answered that they already knew it, unidentified individuals pushed with their hands on his wounds, causing pain.

The deputies' version of events differs substantially from Mendoza's on several crucial points. They testified that after the canine located Mendoza, he was ordered to crawl out of the bushes.[1] The deputies stated that after Mendoza was pulled out of the bushes by the dog, he struggled with the dog. He broke loose, but the dog regained its grip on Mendoza's other side. The deputies claim that Mendoza was ordered to stop struggling and place his hands behind his back for handcuffing. Instead of complying with their orders, Mendoza resisted, and even swung an arm at one of the deputies.

A deputy also testified that no one hit Mendoza on the head. Once Mendoza was handcuffed, the dog was ordered off him and he was driven to the hospital. He was sitting up in the car, but lay down during the drive. A deputy stated that no remarks were made about his smell, and the driver did not slam repeatedly on the brakes, he only slowed as he crossed intersections. No officer testimony was given about the alleged events at the hospital.

Mendoza filed a lawsuit against the deputies involved in his arrest, the County of Los Angeles, and Sheriff Sherman Block, under 42 U.S.C. § 1983, claiming that the deputies used excessive force in arresting him. Prior to trial of Mendoza's claims against the individual deputies, Mendoza moved *in limine* for judgment as a matter of law on the defendants' qualified immunity defense. He cited our decision in *Act–Up!/Portland v. Bagley*, 971 F.2d 298 (9th Cir.1992) (which was later withdrawn and superseded), as au-

thority for the proposition that qualified immunity is a question of law, to be decided by the court.

The trial court found that under this decision it had authority to decide the entire qualified immunity question, and that by means of an evidentiary hearing it could properly determine disputed factual issues. Before proceeding, the court made clear that its qualified immunity determination would involve determination of disputed facts, including credibility issues, stating:

> It would be my intention to have an evidentiary hearing at this point because clearly there is a factual issue involved here and it is going to come down to the believability of the plaintiff and his witnesses as opposed to the defense witnesses. Is there any opposition to that procedure at this time?

Mendoza's attorney responded: "No, Your Honor."

The trial court then heard testimony from Mendoza and several Sheriff's deputies who were present at the arrest, including the dog handler. After the hearing, the trial court decided most of the disputed questions of fact in favor of the defendant deputies. The court then found that the deputy handling the dog had behaved reasonably under the circumstances, and that the deputies therefore were entitled to qualified immunity. The court did not make any findings with respect to the deputies' alleged treatment of Mendoza's wounds in the hospital and Mendoza's claim that the deputies hit him on the head.

## DISCUSSION

### I. *Propriety of the Trial Court Procedure*

■ Mendoza claims we must reverse because the district court improperly resolved disputed questions of fact without a jury. However, Mendoza waived any objection to the evidentiary procedure used by the court, even if the use of such a procedure would otherwise have been erroneous.

---

1. It is unclear whether Mendoza was given an opportunity to come out on his own before the

dog bit Mendoza's arm and pulled him out of the bushes.

Prior to trial, Mendoza moved for the district court to decide the qualified immunity issue, citing *Act–Up!/Portland v. Bagley*, 971 F.2d 298, 301–02 (9th Cir.1992). (This opinion was later withdrawn and superseded by another opinion, *Act–Up!/Portland v. Bagley*, 988 F.2d 868 (9th Cir.1993). All further references to *Act–Up!* are to the superseding opinion.) Both the original *Act–Up!* opinion, upon which Mendoza based his motion, and the subsequent superseding opinion state that disputed factual issues should be decided by the trier of fact. *See Act–Up!*, 988 F.2d at 873. Mendoza was therefore fully informed that factual disputes should be resolved by the trier of fact.

In order to preserve an issue for appeal, a party must make known to the court any objection to the court's action. Fed.R.Civ.P. 46. *See also Animal Protection Inst. of America v. Hodel*, 860 F.2d 920, 927 (9th Cir.1988) (appeals court may decline to review purely legal issue when no "manifest injustice" appears if no objection is made in trial court). Here, Mendoza stated unequivocally that he had no objection to the suggested procedure. He therefore did not preserve any objection to the procedure as an issue on appeal.

## II. *The Qualified Immunity Determination*

■ Mendoza also challenges the merits of the district court's determination that the deputies had qualified immunity. Mendoza consented to what amounted to a bench trial of the qualified immunity question, and he is bound by the outcome of this procedure unless the trial court's rulings of law were erroneous or its findings of fact clearly erroneous. *Brooker v. Desert Hosp. Corp.*, 947 F.2d 412, 415 (9th Cir.1991). We do not find any clear error in the trial court's findings of fact, and the court did not err in its qualified immunity determination with respect to the use of the dog.

### A. *The Use of the Dog*

■ A law enforcement officer is entitled to qualified immunity in a § 1983 action if the district court determines that, in light of clearly established principles governing the conduct in question at the time of the challenged conduct, the officer could reasonably have believed that the conduct was lawful. *See Hallstrom v. Garden City*, 991 F.2d 1473, 1482 (9th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 549, 126 L.Ed.2d 450 (1993). *See also Davis v. Scherer*, 468 U.S. 183, 191, 104 S.Ct. 3012, 3017, 82 L.Ed.2d 139 (1984). This determination requires a two-part analysis. First, the district court must determine whether the law governing the official's conduct was clearly established at the time the challenged conduct occurred. *Hallstrom*, 991 F.2d at 1482; *Act–Up!*, 988 F.2d at 871. The second step then asks whether, under that clearly established law, a reasonable officer could have believed the conduct was lawful. *Hallstrom*, 991 F.2d at 1482; *Act–Up!*, 988 F.2d at 871. This is a test of the "objective reasonableness" of the defendant's actions.

### 1. *Clearly Established Law*

■ This circuit has determined that the first inquiry, whether the law was clearly established, is a pure question of law for the court to decide. *Romero v. Kitsap County*, 931 F.2d 624, 628 (9th Cir.1991) (citing *Gooden v. Howard County*, 917 F.2d 1355, 1361 (4th Cir.1990), *superseded*, 954 F.2d 960 (4th Cir.1992)). *See also Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). In this case, the trial court did not decide whether the applicable law was clearly established. Instead, the court proceeded immediately to the second inquiry: whether the deputies, under the circumstances, behaved in an objectively reasonable manner. "[W]hen qualified immunity is at stake, [however], a court must first determine whether the law has been clearly established." *Romero*, 931 F.2d at 628. Because this inquiry involves a question of law, there is no reason we cannot, in our discretion, decide it in the first instance. *Hamilton v. Madigan*, 961 F.2d 838, 841 n. 6 (9th Cir.1992). *See also Elder v. Holloway*, —— U.S. ——, ——, 114 S.Ct. 1019, 1023, 127 L.Ed.2d 344 (1994).

The inquiry into clearly established law begins with the question of whether the "right the official is alleged to have violated [is] 'clearly established.' " *Anderson v.*

*Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *Elder,* — U.S. at —, 114 S.Ct. at 1023. " 'If the controlling law is not clearly established, a reasonable person would not be expected to know how to structure his conduct in order to avoid liability.' " *Romero,* 931 F.2d at 629 (quoting *Todd v. United States,* 849 F.2d 365, 368–69 (9th Cir.1988)). In *Romero,* we held that the right of Indians to take shellfish from non-reservation areas was not clearly established because no binding precedent or any available decisional law establishing the right existed. Accordingly, deputies were immune from suit for arresting Indians taking such actions.

The plaintiff's legal right cannot be so general as to allow a plaintiff to "convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging [a] violation of extremely abstract rights." *Anderson,* 483 U.S. at 639, 107 S.Ct. at 3038. For example, the Supreme Court in *Anderson* suggested that although "the right to due process of law is quite clearly established ... and thus there is a sense in which any action that violates [the Due Process Clause] (no matter how unclear it may be that the particular action is a violation) violates a clearly established right," such a general allegation is not enough to overcome a defendant's qualified immunity. *Id.*

For qualified immunity purposes, a right "must [be] 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that [at the time the allegedly unlawful action is taken] a reasonable official would understand that what he is doing violates that right." *Id.* at 640, 107 S.Ct. at 3039. *See also Romero,* 931 F.2d at 629. This does not mean that any official action is protected by qualified immunity "unless the very action in question has previously been held unlawful," but it does require that "in the light of pre-existing law the unlawfulness must be apparent." *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039. Thus, when "the defendants' conduct is so patently violative of the constitutional right that reasonable officials would know without guidance from the courts" that the action was

unconstitutional, closely analogous pre-existing case law is not required to show that the law is clearly established. *Casteel v. Pieschek,* 3 F.3d 1050, 1053 (7th Cir.1993).

■ The deputies argue that the law guiding the use of police dogs at the time Mendoza was bitten was not clearly established. They point to the lack of case law addressing the use of dogs to locate fleeing suspects, and argue that under the circumstances they could not reasonably have known how to pattern their conduct so as to avoid liability.

It is true that there are few cases in which the appropriate use of police dogs is addressed. Among these few cases are: *Robinette v. Barnes,* 854 F.2d 909, 912–13 (6th Cir.1988) (deciding, apparently as a matter of first impression, that use of a police dog was not deadly force and not unreasonable when searching for a hiding felon); *Chew v. Gates,* 744 F.Supp. 952, 954 (C.D.Ca.1990) (a serendipitously named case stating that "[n]either federal law nor California law clearly prohibits the training and/or use of police dogs to find, seize and hold suspects, by biting if necessary"); *Marley v. City of Allentown,* 774 F.Supp. 343, 345 (E.D.Pa.1991) (finding that the use of a police dog to pursue a suspected misdemeanant who posed no threat to the officer was unreasonable), *aff'd,* 961 F.2d 1567 (3d Cir.1992); and *People v. Rivera,* 8 Cal.App.4th 1000, 10 Cal.Rptr.2d 785, 789–90 (1992) (finding the use of a police dog reasonable when suspect fled scene of burglary, was believed to be armed, and was hiding from police). When Mendoza was bitten in 1988, the only court of appeals addressing the use of dogs by officials searching for a suspected criminal was the Sixth Circuit. *See Robinette,* 854 F.2d at 909. It is therefore questionable whether fact-specific case law guided the deputies' use of a police dog when they arrested Mendoza.

This does not mean, however, that there was no clearly established law that would indicate to the deputies that a constitutional right might be violated when using a dog during an arrest. Mendoza argues that the use of a police dog in this case constituted excessive force. Officers have a considerable amount of guidance from the courts in the permissible use of force while making an

arrest. It is clearly established that "[t]he use of excessive force by police officers in an arrest violates the arrestee's Fourth Amendment right to be free from an unreasonable seizure." *White v. Pierce County,* 797 F.2d 812, 816 (9th Cir.1986). "The reasonableness of force is analyzed in light of such factors as the requirements for the officer's safety, the motivation for the arrest, and the extent of the injury inflicted." *Id.* This analysis applies to any arrest situation where force is used, whether it involves physical restraint, use of a baton, use of a gun, or use of a dog. We do not believe that a more particularized expression of the law is necessary for law enforcement officials using police dogs to understand that under some circumstances the use of such a "weapon" might become unlawful. For example, no particularized case law is necessary for a deputy to know that excessive force has been used when a deputy sics a canine on a handcuffed arrestee who has fully surrendered and is completely under control. An officer is not entitled to qualified immunity on the grounds that the law is not clearly established every time a novel method is used to inflict injury. *See Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039.

We therefore hold that the deputies' use of the police dog is subject to excessive force analysis, and that this law is clearly established for purposes of determining whether the officers have qualified immunity.

### 2. *Objective Reasonableness*

If the law governing an official's conduct is clearly established, qualified immunity is available if a reasonable official could have believed the conduct at issue was lawful under that clearly established law. *Hallstrom,* 991 F.2d at 1482. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene...." *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989). *See also Anderson,* 483 U.S. at 641, 107 S.Ct. at 3039. The reasonableness inquiry is, however, objective, asking "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motiva-

tion." *Graham,* 490 U.S. at 397, 109 S.Ct. at 1872. The court should consider whether the "'totality of the circumstances'" justifies the force used, examining particularly "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396, 109 S.Ct. at 1872 (quoting *Tennessee v. Garner,* 471 U.S. 1, 8–9, 105 S.Ct. 1694, 1699–1700, 85 L.Ed.2d 1 (1985)).

Here, pursuant to the agreement of the parties, the trial court resolved the relevant disputed questions of fact and made the qualified immunity determination. Based on the consistent stories of the sheriff's deputies and on Mendoza's failure to recall whether there had been any warnings, the court found that announcements were made warning Mendoza that if he did not come out of the bushes he would be bitten. Based on the testimony of two deputies and on Mendoza's own testimony, the court found that Mendoza struggled with the dog, causing the dog to shift positions and bite Mendoza's other arm. The judge found that the deputies used offensive language, as Mendoza alleged at the hearing, but that such language was not "unreasonable." (Nor, or course, was the language "force.") These factual findings are not clearly erroneous. Mendoza put forward only his own testimony, and under the agreed-upon procedure, the trial judge was entitled to assess his credibility as well as that of the other witnesses in making the factual determinations.

There is also no error in the district court's determination, based on the facts developed at the evidentiary hearing, that the deputies' conduct was objectively reasonable. Mendoza was fleeing arrest for a bank robbery, a felony. The deputies believed he was armed, due to radio broadcasts from headquarters. Mendoza did not surrender when warned that he would be bitten if he did not come out of the bushes. He was hiding on private property and the deputies could reasonably have believed he posed a danger not only to themselves but also to the property owners. He had not been subdued when the dog bit him the second time. In fact, once he was

out of the bushes, he struggled with the dog, causing the dog to shift its bite. Using a police dog to find Mendoza, and to secure him until he stopped struggling and was handcuffed, was objectively reasonable under these circumstances.

Mendoza argues that the district court erred in determining whether the deputies' conduct was objectively reasonable because in making such a determination the court made the same inquiry as would be made on the merits of the excessive force claim. He claims that there was sufficient evidence for a jury to find excessive force and that the district court was not entitled to take that determination from the jury. Because Mendoza did not raise any objection to the court's decision to determine the objective reasonableness of the deputies' conduct, and in fact asked the court to decide the entire question of qualified immunity, he did not preserve this issue for appeal.

### B. *The Blow to Mendoza's Head*

Mendoza's complaint asserted both that Mendoza was bitten by a police dog and that he was struck by sheriff's deputies. When it made its findings, the court did not address whether Mendoza was, in fact, hit on the head and if so whether that blow was objectively reasonable. Mendoza does not claim on appeal that the trial court erred in not considering the blow to his head. He argues only that the trial court improperly made factual determinations and alternatively that the factual determinations and legal conclusion were erroneous. Failure to raise an issue on appeal results in waiver of that issue. *Officers for Justice v. Civil Serv. Comm'n,* 979 F.2d 721, 726 (9th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1645, 123 L.Ed.2d 267 (1993); *Miller v. Fairchild Indus., Inc.,* 797 F.2d 727, 738 (9th Cir.1986) (court of appeals ordinarily does not "consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief") (citing *International Union of Bricklayers and Allied Craftsmen Local No. 20 v. Martin Jaska, Inc.,* 752 F.2d 1401, 1404 (9th Cir.1985)).

### C. *Treatment in the Hospital*

Mendoza mentions in his brief on appeal that deputies "tortured" him by pressing their fingers into his wounds at the hospital while demanding to know his name. Mendoza waived this claim on appeal for the same reasons he waived consideration of the alleged blow to his head: Mendoza did not argue in his brief on appeal that the district court erred by not addressing the alleged mistreatment in the hospital when it dismissed his claim.

### CONCLUSION

Mendoza waived any objection to the district court's evidentiary procedure and its decision to determine the question of qualified immunity. The district court's findings of fact were not clearly erroneous, nor were its conclusions of law erroneous. The district court's dismissal on the grounds of qualified immunity of Mendoza's claims that the use of the police canine constituted excessive force is therefore affirmed. Mendoza's claims that he was illegally hit on the head and tortured in the hospital were waived; thus, dismissal of those claims is also affirmed.

For the foregoing reasons, the judgment of the district court is AFFIRMED.