Nathaniel WATKINS, Plaintiff–Appellee,

v.

CITY OF OAKLAND, CALIFORNIA; Joseph Samuels, Jr.; Craig Chew; E. Lewis, Officer; T. Chu, Defendants–Appellants.

No. 96–17239.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 9, 1997.

Decided May 29, 1998.

Claudia R. Leed, Deputy City Attorney; Stephen O. Rowell, Oakland, California, for defendants-appellants.

.Elizabeth H. Eto, Oakland, California, for plaintiff-appellee.

Before: BRIGHT,* FLETCHER and NELSON, Circuit Judges.

* Honorable Myron H. Bright, Senior United States Circuit Judge for the Eighth Circuit, sitting by

FLETCHER, Circuit Judge:

Oakland Police Department (OPD) Chief Joseph Samuels, OPD Officer Craig Chew, and the City of Oakland appeal the district court's denial of their motion for qualified immunity and summary judgment in Nathaniel Watkins' action for damages from dog bite injuries inflicted on him by "Nero," an OPD canine, during his apprehension and arrest for burglary. Watkins brought this action in federal district court pursuant to 42 U.S.C. § 1983 claiming a violation of the Fourth Amendment's prohibition on the use of excessive force in effecting an arrest. The district court denied Chief Samuels and Officer Chew's summary judgment motion finding that Watkins had raised "a genuine issue of material fact as to whether the force used against [Watkins], including allowing Nero to continue biting [him] until [he] showed his hands, was reasonable under the circumstances." The district court also denied Oakland's motion for summary judgment finding the city could be liable if Officer Chew used excessive force in apprehending Watkins. Appellants appeal these interlocutory rulings.

## BACKGROUND

On November 20, 1993, Officer Chew and his police canine "Nero" responded to a silent alarm at Hart & Son Auto Body Shop, a commercial warehouse in Oakland. Four other Oakland police officers also responded. Upon arrival, the officers established a perimeter outside the warehouse because they had seen a person running within the building. There was no evidence as to whether the person was armed. Before releasing Nero to search for the person, Officer Chew announced twice: "This is the Oakland Police Department canine unit. Give yourself up or I'll release my dog who is going to find you and he is going to bite you." Watkins did not surrender to the police and claims that he did not hear the announcement. Officer Chew released Nero, a 72 pound German Shepherd, to search. Nero ran out of sight of Officer Chew, located Watkins who was hiding in a car, and bit him. Upon arriving at the scene, Officer Chew did not call Nero off of Watkins; instead, he ordered Watkins

to show his hands. Watkins, who was recoiling from the dog's bite, failed to comply. Officer Chew then pulled Watkins out of the car onto the ground. Nero continued to bite until Watkins complied with Officer Chew's orders to show his hands.

Officer Chew and Officer David Walsh, another officer at the scene, testified that ten to fifteen seconds elapsed between the time Officer Chew ordered Watkins to show his hands and the time Watkins complied with that order. The officers both agree that Nero continued to bite Watkins throughout that period. In a later statement to the OPD Internal Affairs Division, Officer Chew stated that the time period was about thirty seconds.

Officer Chew justified his delay in calling off Nero because Watkins, while resisting the dog, failed to show his hands to prove that he was unarmed. Watkins explained that he did not show his hands because he was resisting the dog and recoiling from the pain of Nero's attack. Watkins further claims that Officer Chew continued to allow Nero to bite him even though he was obviously helpless and surrounded by police officers with their guns drawn. Watkins was subsequently handcuffed, arrested and ultimately charged with a violation of California Penal Code § 459, commercial burglary.

The officers then called an ambulance for Watkins because of the injuries he sustained from Nero's bites on his foot. Adam Black, the paramedic who examined Watkins, noted "multiple lacerations and punctures to [Watkins'] left foot." Black reported "a jagged tearing of the skin" and a puncture deep enough to allow him to see Watkins' tendons.

Watkins was taken to Highland Hospital Emergency Room, where X-rays revealed fractures of the second and third metatarsals. There, Dr. Johnson observed a split great toe nail; a three centimeter laceration, one centimeter deep between the first and second toes; a five centimeter open area exposing macerated superficial tendons; macerated soft tissue between the second and third toes; a two centimeter laceration be-

designation.

tween the third and fourth toes and a three centimeter laceration on the plantar surface. By December 15, doctors noted a six by eight centimeter non-healing ulcer over and down the third and fourth extensor tendons requiring two subsequent skin graft surgeries. As of April 1995, Watkins still suffered mobility problems and complained of pain.

Oakland, at the time of the incident, employed a "bite and hold" canine policy. Police dogs were trained and tested to bite solidly, bite hard, and hold on. The dogs were trained to rebite if needed and to bite whatever part of the person's body is nearest to them. They were not trained to avoid biting any part of the anatomy. Oakland's policy allowed handlers to release the dogs to find and bite suspects even where the handler had no reason to believe that the person was armed. Police dogs were allowed to act independently of the handler and were thus often out of visual contact when they found and bit a person.

In the five years prior to November 1993, Oakland police dogs found and bit thirty-six commercial burglary suspects. Oakland considered police dogs to be less dangerous weapons than police batons. Oakland did not, however, include police dogs in its guidelines for the use of nonlethal force.

Oakland provided a Bite Review Panel that reviewed every incident in which an OPD dog bites a suspect. After reviewing each incident, this panel issued a finding of Justified, Unjustified, or Accidental. Of the 284 bites reviewed, 256 were found Justified, five Unjustified, and seven Accidental, with the results of the remainder unknown. With regards to the arrest of Watkins, the Bite Review Panel found Nero's biting Watkins justified. Similarly, OPD Internal Affairs Division found Watkins allegations of the use of excessive force in effecting his arrest unfounded.

A. Jurisdiction

1. *Chief Samuels and Officer Chew's qualified immunity claims.*

We have jurisdiction to review a district court's order denying summary judgment on a qualified immunity defense under

the collateral order doctrine. *Armendariz v. Penman,* 75 F.3d 1311, 1316 (9th Cir.1996). However, our jurisdiction is limited to purely legal issues. The collateral order doctrine "does not sanction review of a district court's order denying the defendant's motion for summary judgment on qualified immunity grounds when the basis for the defendant's motion is that the evidence in the pretrial record is insufficient to create a genuine issue of fact for trial." *Id.* at 1317 (citing *Johnson v. Jones,* 515 U.S. 304, 313–19, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995)). Since the district court found genuine issues of fact concerning the reasonableness of Officer Chew's actions, our review is limited to determining whether clearly established law existed at the time of the incident that Officer Chew's actions could have violated. *Johnson,* 515 U.S. at 317, 115 S.Ct. 2151 (limiting "interlocutory appeals of 'qualified immunity' matters to cases presenting more abstract issues of law").

For purposes of the appeal of the denial of immunity, we must "take, as given, the facts that the district court assumed when it denied summary judgment for [a] (purely legal) reason." *Id.* at 319, 115 S.Ct. 2151. In cases like this one where the district court does not explicitly set out the facts that it relied upon, we undertake a review of the pretrial record only to the extent necessary "to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed." *Id.* We review the district court's denial of qualified immunity to Chief Samuels and Officer Chew under those constraints.

2. *The City of Oakland's interlocutory appeal.*

"[A] municipality is not entitled to the shield of qualified immunity from liability under § 1983." *Brandon v. Holt,* 469 U.S. 464, 473, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985); *see also Chew v. Gates,* 27 F.3d 1432, 1439 (9th Cir.1994). Ordinarily, denial of summary judgment that does not dispose of all claims against all parties is not a final appealable order. *See Cheng v. CIR,* 878 F.2d 306, 309 (9th Cir.1989) (noting that "orders granting partial summary judgment, be-

**1092**

cause they do not dispose of all claims, are not final appealable orders under section 1291"). However, Oakland requests that we take pendant jurisdiction over the district court's denial of its motion for summary judgment because the officers' claim of qualified immunity is "inextricably intertwined" with the issue of Oakland's liability. *See Swint v. Chambers County Comm'n*, 514 U.S. 35, 51, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995). In *Swint*, the Supreme Court set out a general rule against exercising pendant jurisdiction over related rulings but left open the possibility that appellate courts could extend such jurisdiction if the rulings were "inextricably intertwined." *Id.*

We do not find the district court's denial of summary judgment to Oakland inextricably intertwined with the denial of qualified immunity to Officer Chew and Chief Samuels. In *Chew*, we held that the liability of Los Angeles for a police dog bite was separate from the officer's qualified immunity defense. *See* 27 F.3d at 1445 (affirming the district court's grant of qualified immunity while reversing the district court's award of summary judgment to the City of Los Angeles). We reasoned that:

> Under the *Monell* doctrine, Chew may recover from the city if his injury was inflicted pursuant to city policy, regulation, custom, or usage. City policy "need only cause the constitutional violation; it need not be unconstitutional per se." City policy "causes" an injury where it is "the moving force" behind the constitutional violation, ... or where "the city itself is the wrongdoer."

*Id.* at 1444 (internal citations omitted). As Watkins' claim challenges Oakland's canine policy, customs and usage, it is not "inextricably intertwined" with Officer Chew's and Chief Samuels' qualified immunity claims. Therefore, we decline to extend jurisdiction to Oakland's appeal of the denial of its summary judgment motion.

**B. Officer Chew's Claim for Qualified Immunity**

▪ We review the denial of qualified immunity de novo. *Act Up!/Portland v. Bag-*

ley, 988 F.2d 868, 871 (9th Cir.1993). "When a law enforcement officer asserts qualified immunity from liability for Fourth Amendment violations, the district court must determine whether, in light of clearly established principles governing the conduct in question, the officer objectively could have believed that his conduct was lawful." *Id.* (internal citations omitted). Under *Johnson*, our review is limited to whether Officer Chew's conduct could have violated clearly established law. 515 U.S. at 317, 115 S.Ct. 2151.

▪ Although the use of excessive force in effecting an arrest is a clearly established violation of the Fourth Amendment, Watkins' legal right cannot be so general as to allow him to "convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

▪ Watkins argues that at the time of the incident the law governing the use of excessive force was clearly established. Officer Chew would confine the issue more narrowly to whether there was clearly established law at the time of the incident that the use of "bite and hold" by police dogs constituted excessive force. Following our prior decision in *Chew*, we agree with appellants that Oakland's "bite and hold" policy did not violate clearly established law concerning the use of excessive force at the time of the incident. *See* 27 F.3d at 1447 ("Because of the current widespread acceptance of the practice of using police dogs to make arrests, and the absence of any contrary authority, we conclude that at the time of Volker's assault there was not clearly established law prohibiting the use of dogs in the manner permitted by the Los Angeles Police Department's policy."). Although *Chew* was based on the law as it existed in September of 1988, there had been no change in the law that would have alerted Officer Chew that his use of a police dog to search and bite was unconstitutional.[1]

---

1. Watkins argues that since 1988, *Marley v. City of Allentown*, 774 F.Supp. 343, 345 (E.D.Pa.

1991), *aff'd mem.*, 961 F.2d 1567 (3d Cir.1992), was published putting Officer Chew on notice

■ However, Watkins makes a different claim of excessive force than that described by Officer Chew. He argues that the duration and extent of force applied in effecting arrest after the officers caught up with Nero amounted to an unconstitutional application of force. *See Mendoza v. Block*, 27 F.3d 1357, 1362 (9th Cir.1994). In *Mendoza*, we explained:

> We do not believe that a more particularized expression of the law is necessary for law enforcement officials using police dogs to understand that under some circumstances the use of such a "weapon" might become unlawful. For example, no particularized case law is necessary for a deputy to know that excessive force has been used when a deputy sics a canine on a handcuffed arrestee who has fully surrendered and is completely under control....
>
> We therefore hold that the deputies' use of the police dog is subject to excessive force analysis, and that this law is clearly established for purposes of determining whether the officers have qualified immunity.

*Id.* at 1362. We agree that it was clearly established that excessive duration of the bite and improper encouragement of a continuation of the attack by officers could constitute excessive force that would be a constitutional violation. Therefore, we affirm the district court's denial of qualified immunity to Officer Chew on summary judgment.

C. Chief Samuels' Claim for Qualified Immunity

■ As Officer Chew's superior, Chief Samuels can be held liable in his individual capacity if he participated in the deprivation of Watkins' constitutional rights. *Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir.1991). Chief Samuels' liability depends upon a jury finding Officer Chew used excessive force against Watkins. If Officer Chew used excessive force, then Chief Samuels' liability hinges on whether he "set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known, would cause others to inflict the constitutional injury." *Id.* at 646 (internal corrections omitted). A supervisor can be liable in his individual capacity "for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation ...; or for conduct that showed a reckless or callous indifference to the rights of others." *Id.* (internal quotations, citations and corrections omitted).

In *Larez*, we upheld a jury verdict finding Los Angeles Police Chief Gates individually liable for ratifying the excessive use of force by officers under his command by his signing a letter denying Larez's complaint when expert testimony showed that he should have disciplined the officers and established new police procedures. *Id.* We held that the jury could find Chief Gates liable for constitutional deprivations where the plaintiff shows that the police chief was responsible for the "constitutional deprivations because he condoned, ratified, and encouraged the excessive use of force." *Id.*

■ Like Chief Gates in *Larez*, Chief Samuels signed an internal affairs report dismissing Watkins' complaint despite evidence of Officer Chew's use of excessive force contained in the report and evidence of Officer Chew's involvement in other police dog bite incidents, and apparently without ascertaining whether the circumstances of those cases required some ameliorative action to avoid or reduce serious injuries to individuals from dogs biting them. In addition, Watkins argues that Chief Samuels did not establish new procedures, such as including the use of police dogs within the OPD's policy governing the use of nonlethal force, despite evidence of numerous injuries to suspects apprehended by the use of police dogs. Since it was clearly established in *Larez* that a jury

that the use of a search, bite and hold technique was unconstitutional when the suspect was unarmed and not wanted for a violent or serious crime. In *Marley*, the federal district court in Eastern Pennsylvania determined that the law was clearly established that it was a constitutional violation for a police officer to unleash a trained attack dog on a fleeing misdemeanant. *Id.* We do not find that a district court opinion in the Third Circuit provided sufficient notice particularly in light of our earlier opinion in *Chew*.

could hold Chief Samuels liable for ratifying Officer Chew's use of excessive force (if the jury finds it to be such), we affirm the district court's denial of qualified immunity to Chief Samuels on summary judgment.[2]

## CONCLUSION

We decline to review the City of Oakland's interlocutory appeal because we lack jurisdiction. We affirm the district court's denial of qualified immunity to Officer Chew and Chief Samuels on summary judgment.

---

**2.** As previously discussed, Chief Samuels cannot be held liable for OPD's "bite and hold" canine policy because there was no clearly established law against such a policy at the time of the incident. *See Chew,* 27 F.3d at 1436 (holding that "individual policy makers may not be held liable.... [T]he law with respect to use of police dogs to seize and bite concealed suspects was not sufficiently established that a reasonable officer

would have known that Los Angeles Police Department's policy was unconstitutional"). Chief Samuels is entitled to qualified immunity as far as the adoption of the policy, itself, is concerned.