**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SCOTT HARVEY HERNANDEZ,
individually,

        *Plaintiff-Appellant*,

    v.

TOWN OF GILBERT, a municipality,
by and through its Police
Department, an agency of the Town
of Gilbert; STEVE GILBERT, Officer,
husband,

        *Defendants-Appellees*,

    and

CHRIS ROBINSON, Officer, husband;
ROBINSON, Jane Doe, wife; JUSTIN
LEACH, Officer, husband; LEACH,
Jane Doe, wife; GILBERT, Jane Doe,
wife; JOE KACIC, Supervising
Officer, husband; KACIC, Jane Doe,
wife; BILL CAMPBELL, Supervising
Officer, husband; CAMPBELL, Jane
Doe, wife; DAN HURD, Supervising
Officer, husband; HURD, Jane Doe,
wife; DOES, John and Jane Does 1–
100,

        *Defendants*.

No. 19-15811

D.C. No.
2:17-cv-02155-
SMB

OPINION

Appeal from the United States District Court
for the District of Arizona
Susan M. Brnovich, District Judge, Presiding

Argued and Submitted November 17, 2020
Phoenix, Arizona

Filed March 4, 2021

Before:  Richard C. Tallman, Jay S. Bybee, and
Bridget S. Bade, Circuit Judges.

Opinion by Judge Tallman

## SUMMARY[*]

### Civil Rights

The panel affirmed the district court's grant, on summary judgment, of qualified immunity to a police officer in an action brought pursuant to 42 U.S.C. § 1983 alleging that the officer used excessive force when he deployed his police dog in effecting plaintiff's arrest for driving under the influence and resisting arrest.

Following a brief police chase, plaintiff fled to his home where he activated the remote-controlled garage door opener, remained in control of his car inside the garage for eight minutes, refused multiple commands to get out of the

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

car, and resisted lesser force employed by officers without effect while he continued resisting. To force compliance, defendant then released his police dog. But even after the dog bit him, plaintiff continued to resist. The officers eventually managed to get plaintiff out of the car and completed the arrest.

In affirming the district court's grant of qualified immunity to defendant on plaintiff's excessive force claim, the panel held that no clearly established law governed the reasonableness of using a canine to subdue a noncompliant suspect who resisted other types of force and refused to surrender. The panel held that neither the initial deployment of the canine nor the duration of the bite violated clearly established law. The panel noted that officers employed an escalating array of control techniques, none of which were effective in getting plaintiff to surrender, before deciding to release the police dog. The panel further held that plaintiff's claim that the duration of the bite was unreasonable because he had surrendered was belied by the video evidence captured on the police officers' body cameras.

---

## COUNSEL

Scott H. Zwillinger (argued), Goldman & Zwillinger PLLC, Scottsdale, for Plaintiff-Appellant.

Robert Grasso Jr. (argued) and N. Patrick Hall, Grasso Law Firm P.C., Chandler, Arizona, for Defendants-Appellees.

**OPINION**

TALLMAN, Circuit Judge:

Scott Hernandez appeals from the summary judgment entered in favor of canine Officer Steve Gilbert and the Town of Gilbert in this § 1983 action alleging that Officer Gilbert used excessive force in effecting Hernandez's arrest for driving under the influence and resisting arrest. Following a brief police chase, Hernandez fled to his home where he activated the remote-controlled garage door opener, remained in control of his car inside the garage for eight minutes, refused multiple commands to get out of the car, and resisted lesser force employed by officers without effect while he continued resisting. To force compliance, Officer Gilbert then released his police dog. But even after the dog bit him, Hernandez continued to resist. The officers eventually managed to get him out of the car and completed the arrest. We affirm the district court's grant of qualified immunity on Hernandez's excessive force claim because no clearly established law governed the reasonableness of using a canine to subdue a noncompliant suspect who resisted other types of force and refused to surrender.

I

The events leading up to the use of the canine in this case are undisputed and were captured on the police officers' body cameras.[1] On the evening of May 5, 2016, Hernandez drank with friends at the local Mad Dog Saloon before

---

[1] The encounter between Hernandez and Gilbert was audio- and video-recorded by department-issued body cameras. These videos were filed as a supplement to the parties' Joint Statement of Stipulated Facts. We have reviewed the video evidence carefully following the Supreme Court's lead in *Scott v. Harris*, 550 U.S. 372, 378–81 (2007).

driving home. Gilbert Police Department Officer Chris Robinson activated his vehicle's lights when he saw Hernandez's car swerving. Although Hernandez saw emergency lights flashing behind him, he continued driving. Officer Robinson used the police vehicle's siren, but Hernandez ignored it, driving for approximately a minute and a half until he pulled into his driveway. Hernandez opened the garage door remotely, pulled into the garage, and shut off his car. While remaining in the car, Hernandez tried to close the garage door remotely. Officer Robinson stopped the door from closing and waited for back-up officers to arrive. Responding to assist in the arrest were Officer Justin Leach and canine Officer Gilbert accompanied by his partner, police dog Murphy.

Over the next two and a half minutes, Officer Robinson gave at least thirteen verbal orders for Hernandez to step out of the vehicle and warned Hernandez that he would be arrested for failing to obey a police officer if he did not. Hernandez refused, repeatedly saying, "No, I'm right here." Officers Robinson and Leach then approached the car with guns drawn since they did not know whether the recalcitrant suspect was armed. For over a minute, Officer Robinson tried to force Hernandez to get out of the car by using control holds, including grabbing Hernandez's left forearm, left leg, his head, and his right ear. Hernandez resisted these holds by tucking his arms close to his body and repeating, "No, I'm not under arrest." Officer Robinson observed that Hernandez's eyes were bloodshot, his speech was slurred, and his breath smelled of alcohol.

Officer Robinson then deployed pepper spray without effect. He warned Hernandez eight more times that he was under arrest and needed to get out of the car. He also warned Hernandez at least five times that a police dog would bite

him if he did not step out of the car.  Hernandez responded, "I'm not going nowhere, dude," "You're on my property, bro. You can't do this shit," and "No, I am not."

Approximately eight minutes after Officer Robinson first activated his vehicle's emergency lights, Officer Gilbert commanded police dog Murphy to bite Hernandez.  As Officer Gilbert approached the car with Murphy on a leash, both the driver's side door and front passenger's side door were open.  Officer Gilbert warned Hernandez that the dog would bite him if he did not step out of the car.  Hernandez closed the driver's side door and leaned to his right in an attempt to close the passenger's door.

Before Hernandez could close the passenger's door, Murphy entered and bit Hernandez's arm for fifty seconds in total.[2]  While Murphy was holding onto Hernandez, Officer Gilbert yelled at Hernandez to get out of the car.  Officer Robinson also ordered Hernandez to crawl forward out of the vehicle.  Although Hernandez repeatedly yelled "alright," he did not move.  Thirty-six seconds into the bite, Officer Gilbert commanded Murphy to release the hold. Fourteen seconds later, Murphy obeyed and released his bite on Hernandez's arm.  Murphy, however, held onto Hernandez's shirt for another twenty-two seconds before completely releasing the hold.  While Murphy hung onto Hernandez's shirt, Hernandez held onto the front passenger headrest and told the officers that they were on his property.

---

[2] While the parties agree on the duration of the bite, the parties in their briefing characterize some of the facts differently at this point in the encounter.  We "view[] the facts in the light depicted by the videotape." *Scott*, 550 U.S. at 381.

Police dog Murphy was engaged with Hernandez for one minute and twelve seconds in total.

After Murphy released Hernandez, Hernandez continued to cling to the headrest despite the officers' repeated orders to get out of the car. When Hernandez refused to comply, Officer Robinson asked, "should we let the dog go again?" Officers Robinson and Leach again instructed Hernandez to step out of the car. Although Hernandez replied "alright," he nonetheless continued to hang onto the headrest, protesting "wait, wait, wait."

Approximately nine and a half minutes after Officer Robinson first activated his vehicle's emergency lights, the officers successfully pulled Hernandez from his car. During the encounter, Hernandez was "under the influence of an intoxicating liquor" and had a BAC of 0.146 when his blood was tested later at the hospital under authority of a search warrant. The officers booked Hernandez on one felony charge for resisting arrest and two misdemeanor charges for a DUI and failure to comply with a police officer. Hernandez ultimately pled guilty to a misdemeanor charge.

Hernandez then sued the Town of Gilbert and several police officers asserting, among other claims not before us, an excessive force claim against Officer Gilbert under 42 U.S.C. § 1983. Relevant to this appeal, Officer Gilbert moved for partial summary judgment on the excessive force claim. In ruling on that motion, the district court granted qualified immunity to Officer Gilbert, holding that "it was not clearly established that an officer in Officer Gilbert's position acted unreasonably, thus violating [Hernandez's] Fourth Amendment rights." Hernandez timely appealed. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## II

We review de novo a district court's decision to grant summary judgment based on qualified immunity. *Woodward v. City of Tucson*, 870 F.3d 1154, 1159 (9th Cir. 2017). We view the facts in the light most favorable to the non-moving party to determine whether any genuine disputes of material fact remain and whether the district court correctly applied the law. *Id.* However, we do not accept a non-movant's version of events when it is "clearly contradict[ed]" by a video in the record. *Scott v. Harris*, 550 U.S. 372, 378–80 (2007).

## III

Qualified immunity shields government officials under § 1983 unless "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). The Court may address the two prongs in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). We consider only the second prong here.

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (quoting *Reichle*, 566 U.S. at 664). While we do not require a case on all fours, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citations omitted). Qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Wesby*, 138 S. Ct. at 589 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

"[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

Hernandez argues that both the initial deployment of the canine and the duration of the bite violated clearly established law.

### A

To defeat qualified immunity, Hernandez must show that the state of the law as of May 5, 2016, gave a reasonable officer "fair warning" that using a police dog on a noncompliant suspect, who had resisted lesser methods of force to complete his arrest, was unconstitutional. *See Hope*, 536 U.S. at 741. Hernandez relies on *Mendoza v. Block*, 27 F.3d 1357 (9th Cir. 1994). In *Mendoza*, we affirmed the dismissal on qualified immunity grounds of a § 1983 claim by Mendoza, who was severely bitten by a police dog while trying to evade arrest for bank robbery by hiding for several hours in bushes on private property. *Id.* at 1358. Deputies used the dog to find and pull Mendoza out of the bushes. *Id.* at 1359. The deputies ordered Mendoza to "stop struggling and place his hands behind his back for handcuffing." *Id.* Mendoza resisted and "swung an arm at one of the deputies." *Id.* We held that the law was clearly established that the use of the police dog was subject to excessive force analysis but that the deputies' use of the police dog to find the suspect and to "secure him until he stopped struggling and was handcuffed" was objectively reasonable. *Id.* at 1362–63.

While it's well-settled that the use of a police dog is subject to excessive force analysis, the relevant inquiry is whether existing precedent placed the question "beyond debate" that Officer Gilbert's decision to deploy Murphy to help arrest Hernandez was unconstitutional. *See al-Kidd*,

563 U.S. at 741. In finding the deputies' conduct objectively reasonable, the *Mendoza* court reasoned that: (1) Mendoza did not surrender when warned that he would be bitten; (2) he was fleeing arrest for a felony; (3) the deputies believed Mendoza was armed based on radio broadcasts from headquarters; and (4) the deputies could have reasonably believed Mendoza posed a danger to the property owners as well as the deputies because he was hiding on private property. 27 F.3d at 1362–63. Here, Hernandez did not surrender when warned many times that he would be bitten by a police dog after he failed to obey the officers' numerous orders to exit his car and resisted their use of lesser force to take him into custody.

The evidence is undisputed that Hernandez fled from Officer Robinson and tried to lock himself inside his garage to avoid being arrested. Unlike *Mendoza*, the officers here were not warned by headquarters that Hernandez might be armed, but Hernandez remained in his car to evade arrest, and Officer Gilbert did not know whether Hernandez was armed as no one had searched him yet. Fleeing from a pursuing officer and taking evasive action to avoid a misdemeanor arrest for DUI may be less serious than fleeing a bank robbery, but Officer Gilbert testified that "once someone starts to act in a way that they're fleeing from the police, that starts to heighten our awareness that there's something else going on than just someone who just doesn't want to stop." While there are differences between the circumstances that confronted the deputies in *Mendoza* and those that Officer Gilbert faced, *Mendoza* does not place "beyond debate" whether Officer Gilbert's use of a police dog to facilitate Hernandez's arrest under the circumstances of this case violated the Fourth Amendment. *See al-Kidd*, 563 U.S. at 741.

Most significantly, *Mendoza* does not clearly establish that Officer Gilbert's conduct violated Hernandez's Fourth Amendment rights because it does not address the "specific context" of this case:  officers using minimal force at the beginning of an encounter and escalating the level of force employed, ultimately deciding to use a police canine when other methods were unsuccessful. *See Hamby v. Hammond*, 821 F.3d 1085, 1091 (9th Cir. 2016).  The officers in *Mendoza* used the dog to locate the suspect, so the encounter began with the use of a dog bite.  27 F.3d at 1358.  Here, Officers Robinson, Leach, and Gilbert did not begin the encounter with a dog bite.  Instead, the officers initially gave verbal commands to surrender to their authority.  When Hernandez refused to obey, the officers tried control holds.  Then they used pepper spray, which failed to achieve compliance.  They then warned Hernandez about the impending release of the dog if he refused to yield.  Only after all of these methods failed to overcome Hernandez's resistance, did Officer Gilbert deploy Murphy.  *Mendoza* says little about how a reasonable officer should escalate the use of force on a noncompliant suspect.  The record here does show that the officers employed an escalating array of control techniques, none of which were effective in getting Hernandez to surrender, before deciding to release the police dog.  Because the facts are so dissimilar, *Mendoza* does not clearly establish that Officer Gilbert's conduct in eventually deploying Murphy was unconstitutional.

B

Hernandez also claims that the duration of Murphy's bite was unreasonable because he had surrendered.  The video belies his argument.  Our caselaw is clear that an officer cannot direct a police dog to continue biting a suspect who has fully surrendered and is under the officer's control.

*Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998); *Koistra v. County of San Diego*, 310 F. Supp. 3d 1066, 1082–84 (S.D. Cal. 2018).[3]  Officer Gilbert, however, is entitled to qualified immunity because Hernandez did not surrender at any point during the encounter; rather, the officers had to physically drag him from his car after the dog bite.

While we view the facts in the light most favorable to the non-moving party at the summary judgment stage, we are not required to accept a non-movant's version of events when it is "clearly contradict[ed]" by a video in the record. *Scott*, 550 U.S. at 378–80 (where petitioner's benign characterization of the police pursuit under very dangerous conditions was refuted by the dashcam video).  Here, Hernandez stipulated to the bodycam footage.  At the time Officer Gilbert directed Murphy to bite Hernandez, the videos establish beyond cavil that Hernandez had not surrendered.  Hernandez refused to comply with the officers'

---

[3] Hernandez argues that the district court erred in declining to consider *Koistra*.  While courts generally don't consider post-incident cases in determining "whether the law was clearly established at the time of the incident[,] . . . post-incident cases that make a determination regarding the state of the law at the time of the incident are persuasive authority."  *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996) (citing *Baker v. Racansky*, 887 F.2d 183, 187 (9th Cir. 1989)).  *Koistra* considered the law regarding the use of a police dog in an arrest as of January 8, 2016, well before Hernandez's arrest on May 5, 2016.  310 F. Supp. 3d at 1082.  While *Koistra* itself could not have put Officer Gilbert on notice, it is persuasive authority as far as it examined the state of the law in January 2016.  However, *Koistra* provides no support to Hernandez, because it merely reiterates what *Watkins* and *Mendoza* already made clear:  an officer's use of canine force against a suspect who has surrendered may violate the Constitution.  *Koistra*, 310 F. Supp. 3d at 1084.  The irrefutable facts here simply do not support that conclusion as applied to the conduct of Hernandez.

instructions for eight minutes and resisted their uses of lesser force, including control holds and pepper spray. Officers warned Hernandez at least five times of the impending use of a canine. As Officer Gilbert approached the vehicle, Hernandez closed the driver's door and leaned over to shut the passenger's door. During and after the dog bite, Hernandez continued to resist. Hernandez states that he "offered to surrender," but the video does not show any evidence besides Hernandez's shouts of "alright." His body language on the recording shows otherwise.

Hernandez points to *Koistra*, but that case bolsters the conclusion that he did not surrender. In *Koistra*, the district court relied on *Watkins* and *Mendoza* in finding that the law was clearly established that use of a canine violated the Fourth Amendment "when the victim . . . has surrendered by having her arms up in the air," but the officer allowed the dog to bite the suspect for 30 more seconds and "drag the victim by her mouth for a distance of 12 feet." 310 F. Supp. 3d at 1082–84.[4] While the suspect in *Koistra* offered to surrender by putting her arms up and asserting that she was unarmed, *see id.* at 1084, Hernandez did not put his arms up or assert that he was unarmed. *Koistra* illuminates Hernandez's failure to surrender.

Hernandez claims that the "duration and force of the dog bite" in *Watkins* was similar enough to put Officer Gilbert

---

[4] While *Koistra* does not change the outcome for Hernandez, the district court in *Koistra* erroneously stated that *Mendoza* affirmed the district court's *denial* of qualified immunity where the law was clearly established, but the officer's conduct *was not* objectively reasonable. *Koistra*, 310 F. Supp. 3d at 1083. *Mendoza* actually affirmed the district court's *grant* of qualified immunity where the law was clearly established and the officer's conduct *was* objectively reasonable. 27 F.3d at 1361–63.

on notice.  In *Watkins*, the officer used the police dog to find Watkins, who was hiding in a car inside a commercial warehouse.  145 F.3d at 1090.  When the officer caught up to his police dog, who was biting Watkins, the officer ordered Watkins to show his hands.  *Id.*  Watkins was recoiling from the dog's bite and claimed that he was unable to comply with the order to show his hands.  *Id.*  While the dog continued to bite Watkins, the officer pulled Watkins out of the car onto the ground.  *Id.*  After thirty seconds, Watkins complied, and the handler ordered the dog to release Watkins.  *Id.*  The court found a genuine dispute of material fact as to the reasonableness of the continued dog bite when Watkins may have surrendered, as he claimed that both the pain of the dog bite and his resistance against the dog prevented him from complying with officers' orders to show his hands.  *Id.* at 1090, 1093.

Although Hernandez relies on *Watkins*, the video recordings during and following the dog bite show that inability did not prevent Hernandez from complying with the officers' directions.  The video instead shows that he chose not to comply because, in his words, the officers were "on his property."  Although Hernandez began shouting "alright," he did not obey Officer Robinson's command to crawl forward out of the car.  Moreover, as soon as Murphy was called off, Hernandez again physically and verbally refused to comply with the officers.  No reasonable officer facing such a recalcitrant suspect would be likely to think Hernandez was "completely under control."  *See Mendoza*, 27 F.3d at 1362.  He hung onto the headrest to resist being removed from the car and told the officers that they were on his property.  Officer Robinson had to threaten to use the dog again because it appeared that the first use of Murphy had been unsuccessful in convincing the suspect to yield to police commands; Hernandez was still not getting out of the

car.   The officers ultimately had to physically pull Hernandez out despite his attempt to remain in the car.  The bodycam video belies Hernandez's attempt to characterize his actions as surrender.

Hernandez makes no attempt to discuss his resistance after the dog bite.  While "alright" could possibly constitute submission to the authorities under other circumstances, based on Hernandez's continuing resistance here as shown on the video recording, a reasonable officer in the position of Officer Gilbert would not view Hernandez's conduct as an act of surrender.  Hernandez fails to meet his burden to show a genuine issue of material fact as to whether he surrendered.   The video conclusively shows he did not. There was thus no material fact in dispute that required a jury to resolve.

## IV

Because Hernandez cannot identify a violation of any "clearly established" right, Officer Gilbert is entitled to qualified immunity.   The district court's order granting summary judgment on the ground of qualified immunity to Officer Gilbert is **AFFIRMED**.