**NOT FOR PUBLICATION**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

RODRIGO BENITO AGUILAR,

          Plaintiff-Appellant,

  v.

KNUEPPEL, Det., Mesa Police Department, #21600; et al.,

          Defendants-Appellees.

No.   23-15442

D.C. No.
2:21-cv-02214-DWL-MTM

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Arizona
Dominic Lanza, District Judge, Presiding

Submitted March 27, 2024[**]
San Francisco, California

Before: FRIEDLAND, SANCHEZ, and H.A. THOMAS, Circuit Judges.

    Plaintiff-Appellant Rodrigo Benito Aguilar ("Aguilar") appeals the district

court's order granting summary judgment to Defendants Michael Knueppel, Eli

Elliott, Richard Bates, and Joel Hight ("Defendants") on qualified immunity

---

    [*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

    [**]    The panel unanimously concludes this case is suitable for decision without oral argument. See Fed. R. App. P. 34(a)(2).

grounds. We have jurisdiction under 28 U.S.C. § 1291. Reviewing de novo, *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011), we affirm.

Aguilar filed this § 1983 action raising Fourth Amendment excessive force claims against Defendants related to their actions in arresting him after he was suspected of stealing a car at gunpoint.[1] Defendants are entitled to qualified immunity because, viewing the facts in the light most favorable to Aguilar, a reasonable officer would have believed that the "nature and quality of the intrusion on [Aguilar's] Fourth Amendment interests" were justified by the "countervailing governmental interests at stake," and Defendants therefore did not violate Aguilar's Fourth Amendment rights. *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)); *see also Torres*, 648 F.3d at 1123 (holding that an officer may be denied qualified immunity at the summary judgment stage only if (1) the evidence "taken in the light most favorable to the party asserting injury, show[s] that the officer's conduct violated a constitutional right, and (2) the right at issue was clearly established at the time of the incident such that a reasonable officer would have understood her conduct to be unlawful in that situation").

---

[1] Although Aguilar labeled Count III of his First Amended Complaint as a medical care claim, it appears to be a continuation of his excessive force claim, and to the extent it raises a separate claim for lack of medical care, it does not allege that he did not receive proper medical care and in fact admits that he was hospitalized following the incident.

Defendants Knueppel, Elliott, and Hight used an intermediate "quantum of force" in arresting Aguilar, and Defendant Bates used minor force. *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003). After the high-speed car chase ended in Officer Bates executing a PIT maneuver and Aguilar's car flying into oncoming traffic,[2] Aguilar ran out of the car, and Defendants ran after him. Officer Elliott tased Aguilar in the back in "dart mode" after yelling "Taser! Taser!" at him. Officer Elliott then pressed the button on his taser a second time to deliver an additional electrical charge.[3] We have previously held that the use of a taser in dart mode constitutes "an intermediate, significant level of force." *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010).

Once Aguilar fell to the ground, Officer Knueppel got on his back and punched him several times in the back of the head. At the same time, Officer Hight struck Aguilar several times in his side. Officer Bates held down Aguilar's legs and helped handcuff him. "We have recognized that 'physical blows or cuts' often constitute a more substantial application of force than categories of force that do not involve a physical impact to the body." *Nelson v. City of Davis*, 685 F.3d

---

[2] Aguilar does not appear to allege that the PIT maneuver constituted excessive force.

[3] Although Officer Elliott states in his declaration that he does not believe the second electrical charge went through because he had reason to believe the taser was no longer working, Aguilar states that he was tased multiple times, and we resolve disputes of fact in Aguilar's favor. *See Torres*, 648 F.3d at 1123.

867, 878 (9th Cir. 2012) (quoting *Forrester v. City of San Diego*, 25 F.3d 804, 807 (9th Cir. 1994)). Because Officers Knueppel and Hight's uses of force were "capable of inflicting significant pain and causing serious injury," they constitute "intermediate force." *Young v. County of Los Angeles*, 655 F.3d 1156, 1161 (9th Cir. 2011). Officer Bates's efforts to hold down Aguilar's legs and to help handcuff him, however, constituted a minor application of force.

The amount of force Defendants used was justified by the Government's interests, which we determine were significant here by looking to "the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Defendants had been informed by a dispatcher that Aguilar was actively fleeing an armed carjacking and that during the car chase he had already hit multiple vehicles, was ignoring red lights and stop signs, and was driving at a high speed. Not only, therefore, was Aguilar fleeing arrest for a number of serious crimes, but Defendants had reason to believe he was armed and posed a risk to their safety. *See Johnson v. County of Los Angeles*, 340 F.3d 787, 793 (9th Cir. 2003) (holding that an armed robbery suspect posed an "obvious and significant danger to the police and others," particularly after he had engaged in a high-speed chase with police). Although Aguilar claims that he did not have a gun, he does not dispute that the officers were

4

told he had just robbed a car at gunpoint, and we must judge Defendants' use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. While Aguilar was running on foot, Officers Knueppel, Elliott, and Bates saw Aguilar reach for his waistband, which, even if Aguilar was in reality simply trying to pull up his pants, could have led a reasonable officer to believe at the time that he may be reaching for a gun. Aguilar also fled into an apartment complex, which could have led a reasonable officer to worry he would pose a danger to bystanders. A reasonable officer therefore could have believed that tasing Aguilar was necessary to prevent him from hurting officers or bystanders.

Even once Aguilar had been tased, he continued to squirm, suggesting that he was not entirely incapacitated.[4] When he was on the ground, his hands were underneath his body, near his waistband. A reasonable officer therefore could have believed that hitting Aguilar in the head and side and holding down his legs was needed to disorient or incapacitate him so that he could be handcuffed and to prevent him from reaching for a gun or otherwise hurting the officers or

---

[4] Although Aguilar claims at times that he did not struggle once he was tased, that claim is contradicted by the video evidence, as well as his other statements, which at least establish that his hands were under him near his waist, that he was writhing on the ground, and officers struggled to get him into handcuffs. We need not accept Aguilar's allegations when they are clearly contradicted by video evidence in the record. *Hernandez v. Town of Gilbert*, 989 F.3d 739, 743 (9th Cir. 2021).

bystanders.

For the foregoing reasons, we **AFFIRM**.